Good morning, Your Honor. Good morning. You may begin at any time that you are ready. May it please the Court, I'm Steve Rahn, and with my co-counsel, Kevin Berni, we have the Springfield Police Department in this matter. In the early morning hours of May 6, 2018, Plaintiff was a patron in a Springfield After Hours bar. Officers Nicholas Renfro and Terrence Davis were off-duty police officers working security for the establishment. Because of an altercation inside the bar, Plaintiff, by his own account, was asked to leave several times, and each time instead of leaving, he questioned why. Eventually, Officer Davis, along with the bar's bouncer, physically escorted the Plaintiff out of the bar. Here's my first question, please, Mr. Rahn. Is it considered resisting arrest for a suspect to ask an officer why he is being arrested? I don't believe the mere act of asking an officer would be considered resisting arrest. Once he was outside the bar, again, in his own words, he turned to face the officer man-to-man. At this point, Officer Renfro intervened and took the Plaintiff to the ground. There's something else in that sentence, and it is to talk. He turned man-to-man. He claimed to talk from Officer Renfro's perspective. He was within one foot of his partner, easy range of his firearm, and he had not yet submitted to the control of officers. Mr. Rahn, isn't your problem there that that's the dispute? That's what the whole case is about. Your facts, as you described them, I listened to them very carefully, and you said exactly what I think the uncontested facts are. The Plaintiff walks out of the bar, and he then turns to confront Officer Davis, and he's standing there face man-to-man, and he gets body-slammed. You may win at trial, but if you take those facts as you just recited them, what about those facts says that it's okay for a police officer to body-slam somebody, or what case? There can't possibly be no case that says that's okay. I guess what I'm getting at is if you take the facts the way the Plaintiff says that they are, and they might not be. I don't know, but we are without jurisdiction to hear an appeal if there's a dispute of material fact, as the District Court found there to be. If you have a man who's escorted out of a bar, no matter what the facts are, and he's out of the bar, he's talking to Davis, and he's man-to-man, face-to-face, and according to the Plaintiff, Officer Davis did not tell him he was under arrest. Then he was body-slammed to the ground by Officer Renfro a few seconds later, and it broke a tooth. It wasn't like he grabbed his arm and pulled him away. He knocked his teeth out of his mouth. Now, if those are the undisputed facts, I guess my question is, how do we have jurisdiction to hear this appeal? The jurisdiction is simply that there is no case that has said that a person who is mildly resisting in the sense of not submitting. Now, the facts that are in dispute have to do with the level of resistance, but there is no dispute. Oh, no, there are. Look, the two of you, I think, have such wildly different scenarios and a number of disputed issues here. Flowers' version of events is he didn't know he was subject to arrest until after the takedown. I mean, is it even possible for him to have resisted arrest without knowing he is subject to arrest? I could go through the litany. The officer claims that Flowers refused to leave, both verbally and physically. The Plaintiff testifies he began to leave when he was told to leave, didn't argue with Officer Davis, told Officer Davis, and the balance is that he didn't want any problems. I mean, the Plaintiff denied that Davis ever told him he was under arrest or asked him to turn around and place his hands behind his back. He said, you know, Officer Renfro, the defendant Renfro, he claims that the Plaintiff manifested his resistance by turning to face Officer Davis. The Plaintiff denies that he ever turned. I mean, look at all of these. I mean, how do we? Yes, Your Honor, there are a very great number of disputed facts. There are no disputed facts. The facts that I laid out today are not disputed. When he refused to exit the bar immediately, he had to be asked several times. When he was physically escorted out of the I'd like to have a conversation with you, he turned to face him man to man, and he used those terms. I was facing him down man to man. Now, that is a subject who has not submitted. It is a subject who is a danger to the officer because he was within easy reach of his firearm, and there is no way that he could be subject to a take down by the Plaintiff, where a person who has not submitted could not be subject to a take down. I think Judge Roldner's point is that you refer to this not submitted or mildly resisting. That is in dispute. There's no submit to what. Mildly resisting. I bet when I asked Mr. Meier whether his client was mildly resisting, he's going to say no. That's what I bet he's going to say, and so that means that there's no case that says a police officer can't take a person to the ground by force. There are cases that say that. No, Your Honor. With all due respect, he turned to face the officer as opposed to simply submitted, yes, Your Honor, or yes, officer, I'm ready to go. He turned to confront him, and that is what Officer Renfro was faced with. A subject turned to an approach and confronted his partner, and there is no case law that suggests that an officer is required to wait to see if a subject is going reach for his partner's firearm. Even that is disputed. Even that's disputed, the issue of turning. Right. If you look at the plaintiff's testimony on page 125 of the appendix, he says I turned to face him man to man. That is not disputed. He said that. The district court thought that he disputed it, but he overlooked the fact that Mr. Flowers said I turned to face him man to man on page 125 of the appendix. You have to do the whole sentence. Pardon? He turned to face him man to man to talk, but Officer Renfro didn't know that he was just going to talk. All he saw was somebody who has not agreed to do anything that the officer said suddenly turning to his partner, and Officer Renfro is not required to wait to see if he's just going to talk or if he's going to take some action against him, and there is no case law that suggests that someone who has not submitted so far, this court itself in Johnson, the guy simply didn't sit down, and he was the officer who took him to the ground then. This guy in Johnson versus Rogers, the plaintiff was already handcuffed, but he refused to sit down, and they took him to the ground, and that was so-called mild resistance enough that there was no case law, and I would suggest that the case here is in dispute or indistinguishable from Escondido versus Evans, a Supreme Court case where the guy merely brushed by the officer. Can you explain to me how someone who says, I honestly did not know I was under arrest, can be resisting or not submitting if he doesn't even know he's under arrest? He had, throughout the evening and on many occasions, refused directions, and this was just a continuation of his refusal, of his mild resistance, but he was outside the bar at that point, and he was after he had been escorted physically by a bouncer and a police officer, and so he was no longer trespassing at that point. He was, he had already trespassed, and probable cause for the arrest for trespass already existed at that point. Okay, unless anyone has another question. Do you, if you do, please ask. No, I don't. Thank you, Judge Rolder. Sure. Okay, well, Mr. Meyer. Go ahead. Good afternoon. May it please the court, my name is Louis Meyer, and I represent the plaintiff, Pelley Willie Flowers. There are two main reasons why Judge Mill's decision should be upheld. First, the collateral order doctrine does not permit an interlocutory appeal when there's genuine issues of material fact that remain. Judge Mill's did not err in finding a dispute of material fact. That was the basis for his finding the use of force was unreasonable, and that cannot be challenged at this time. Second, Judge Mill's also was correct in not granting qualified immunity to Officer Renfro. It was clearly established that the amount of force that was used for someone that was non-resisting, docile, you cannot grab a person and slam to the ground, which was established in the Morphin case, and also in Holmes, or his village of Hoffman Estates, which was established prior to the incident here with Mr. Flowers. As the court pointed out, there are, from plaintiff's perspective, many disputed material facts. Mr. Flowers did testify when he was trying to figure out why he was asked to leave. The testimony is one bouncer told him to stay, another told him to leave, but when he was asked to leave, he walked out and he said, quote, I'm walking out the door. I'm cool, man. I'm good. I don't want any problems, and walked outside. Once he was outside, he was again asking Officer Davis, what's going on? These other individuals are the ones that started this incident with my fiancee, and it is disputed that he turned to face Officer Davis. Mr. Flowers' testimony was, I was already facing him, talking man to man, and I know lies made of the first man to man, and that is the terminology that Mr. Flowers used as I was talking to this person man to man, and most importantly is the fact that Mr. Flowers was not told that he was under arrest, according to him, until he was already slammed on the ground being handcuffed. So it's our position there was nothing for him to even be resisting at that point. He complied, he left the bar, was waiting for his wife in the parking lot when, according to Renfro himself, without warning, without provocation, came up behind Mr. Flowers and performed what we don't believe is a clean takedown, but was more of a UFC move compatible with Mr. Renfro's background as a strike, where he purposely grabbed Mr. Flowers and slammed him face first on the ground with such force that knocked out a tooth and caused lacerations. This was a move that Renfro admitted through his training in UFC is not a regular takedown, but can be caused as a strike. Based on those reasons, we believe that the opinion about what types of resistance a suspect would have to be engaging in before a court might determine that a takedown was a reasonable use of force. Right, and I do, through the case I've read, it's, you know, whether you're batting an arm away. I think the key point is, at that point, is there an arrest to be resisting from? So if you're just talking with an officer and you're flailing your arms and having a conversation, I would not consider that a resistance, but once an officer makes a command to seize you under the Fourth Amendment purposes and you somehow frustrate that process by pulling away, walking away, getting into a fighting stance, I believe then an officer would be justified in using some force to overcome that resistance. What we have here is we have none of that. Both Officer Davis and Renfro admit Mr. Flowers never took a swing, never got in a fighting stance, never even verbally threatened the officers. So I know the case law is clear that officers are able to use force to overcome a suspect's resistance, but I don't think it's a reasonable use of force. And I've exhausted my points I wanted to make, unless any of the other judges have any questions for me. I think it's a pretty straightforward, clear case here on why qualified immunity was not an issue. No, thank you, Judge Roebner. Oh, thank you. And Mr. Rohn, two minutes, please. This is what you asked for. I think the difficulty here is the idea of qualified immunity means that an officer has clear breakdown. And in this case, the court said, well, the jury has to determine the level of resistance here. And that is precisely what the Supreme Court in Escudino v. Emmons said. You cannot simply leave the question of reasonableness to a jury unless there was clear precedent that the officer's actions were unlawful. Mr. Rohn, let me interrupt you there, because I think that's a correct statement of the law. I think the issue here, though, is more than that. And perhaps your client may be entitled to qualified immunity after a jury finds facts. Interrogatories to the jury would be a good idea in this case, were we were to affirm and it go to a jury. Because, for instance, we've said like, there's no clearly established rule forbidding a clean takedown to end mild resistance, which is what you're suggesting. But we've also said using significant force on passively resisting suspects is illegal, is unconstitutional. You can't do it. So here, there's another issue with respect to the level of force used. And we just don't know this on this record. Was it significant force? Was it a clean takedown? Those are questions that a jury can probably answer, which may entitle your client to qualified immunity. But I don't know, based on our jurisdictional limitations on a case like this, how we can deal with those on appeal at this time. Well, Your Honor, if you're going to suggest that the jury evaluates how much of the force was necessary in every case, then there is no qualified immunity to protect a person from a trial, which is what the Supreme Court has said. In this case, there is no evidence of anything more than just a takedown. There was no kicking him when he was down, tasing him when he was down. All the types of things that this court has in the past said that if you're going to administer punishment, that's not acceptable. There was no evidence introduced that there was anything beyond simply taking him around in a bear hug and taking him down. And the fact that you knew... So hard. That is two scones. Wow. Well, this court has also said that if somebody gets injured during a takedown, that is not the issue. If he's taken down and happens to hit his tooth first, it doesn't matter how gentle the takedown was. If you land on your tooth, unfortunately, you're going to be injured. Mr. Ron, I know we're out of time, but that may be right. But there is evidence in the record about your particular client in a strike, in a particular takedown that's used to cause an individual to land on their head. That's disputed here as to what type of takedown was actually... What level of force was used, the manner in which the force was applied. And I think that's probably important here. And these are facts that at the end of the day, your client may well be entitled to qualified my view. And don't forget that the jury is assessing the level of resistance. If that were the case, Your Honor, then... Not just the reason, and the reasonableness of course. If that's the case, then in any takedown case, it will always have to go to the jury to see if it was too much of a takedown. Well, that's not true because oftentimes you have a plaintiff that testifies that an event happened and 10 witnesses say it didn't happen. And those cases are decided on summary judgment for the officers in terms of qualified immunity. That happens. And of course, there are things that Judge Mills could do with respect. You can't lie. You can't lie at depositions and things like that. And there are sanctions that can be imposed if Judge Mills found that there were bad acts committed to avoid summary judgment in a case like this. There are measures that the courts can take to prevent that. I understand your concern, Mr. Ron, and it's a valid concern, but maybe this case is just a little different. That's all. Thank you, Your Honor. Well, thank you both so very much. And of course, the case will be taken under advisement.